**Rose GILLUMS, on behalf of Joseph D. Gillums, an infant**

v.

**The SECRETARY, U. S. DEPARTMENT OF HEALTH, EDUCATION AND WELFARE.**

**Civ. A. No. 70–997–M.**

United States District Court, D. Maryland.

Sept. 7, 1971.

Alfonso N. Pearson and Henry P. Johnson, Seat Pleasant, Md., for plaintiff.

George Beall, U. S. Atty., and Jean G. Rogers, Asst. U. S. Atty., Baltimore, Md., and G. Michael Fenner, Civil Division, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

JAMES R. MILLER, Jr., District Judge.

This case involves a review of the decision of the Secretary of Health, Education and Welfare that one Joseph D. Gillums, an infant, is not entitled to a child's insurance benefit under the provisions of Title 42 U.S.C. Section 402(d). Jurisdiction is under 42 U.S.C. Section 405(g).

The court's original opinion in this case was an oral one delivered from the bench. At the request of counsel for the Secretary, the court's opinion is hereby supplemented and revised as to form and filed in the case as a written opinion nunc pro tunc as of August 27, 1971.

The facts are undisputed that Joseph D. Gillums, an infant, was adopted by Rose Gillums and George Gillums, her husband, by a decree of the Circuit Court for Prince George's County, docket 2225, on the 26th day of June, 1964, which said date was more than 24 months after the month in which the claimant, Rose Gillums, became entitled to disability insurance benefits for a period of disability beginning October 29, 1956.

The facts are further undisputed that the natural mother of the child, now known as Joseph D. Gillums, placed said child for adoption with the claimant and her husband.

It is further undisputed by all parties that the natural mother of Joseph D. Gillums, infant, was not in the business or occupation of placing children for adoption and that she neither worked for, nor was she herself, a child placement agency licensed to conduct said business under the provisions of Article 88A, Sections 20 and 21, of the Maryland Code (1969 Replacement Volume).

42 U.S.C. Section 402(d) (8) (D), provides in part that, subject to certain conditions not here pertinent, an adopted child of an individual entitled to certain old age or disability insurance benefits under the Social Security Act is entitled to a child's insurance benefit if that child was legally adopted by such individual within 24 months of the end of the month in which such individual most recently became entitled to disability insurance benefits. Since the infant in this case admittedly was not legally adopted within 24 months of the month in which the claimant became entitled to disability insurance benefits, no child's insurance benefits would be payable under this subsection.

42 U.S.C. Section 402(d) (8) (E), adopted as an amendment to the preexisting law in 1968, provides that an adopted child, subject to certain conditions not here relevant, is entitled to a child's insurance benefit if that child was legally adopted by the person entitled to disability or old age insurance benefits (i) in an adoption which took place " * * * under the supervision of a public or private child-placement agency," (ii) through a decree of adoption issued by a court of competent jurisdiction in the United States, (iii) at a time when such individual had continuous residence within the United States for at least the immediately preceding year, and (iv) when the child was less

than 18 years old. It is admitted that the claimant met all the other conditions of Section 402(d) (8) (E) except the one now in dispute.

At the time of the adoption as well as now, Maryland law prohibited the placement of a child by anyone except (1) a licensed child placement agency, (2) the local department of social services [a governmental agency having general responsibility for social service and public assistance activities], or (3) the natural mother and certain other close natural relatives of the child. Article 88A, Section 20, Annotated Code of Maryland (1969 Replacement Volume). The claimant argues that the natural mother of Joseph D. Gillums was allowed under Maryland law to place him for adoption and she was therefore "a private child placement agency" approved by the state.

The question in this case then does not involve a factual issue but involves a determination of a question of law, i. e., whether or not the term "private child-placement agency," as used in Title 42 U.S.C. Section 402(d) (8) (E) (i), would encompass the natural parent of Joseph D. Gillums who, under the pertinent Maryland law, was allowed to place her child for adoption by the claimant in this case.

The Secretary is granted by Section 205(a) of the Act the right to make rules and regulations which are not inconsistent with the provisions of the sub-chapter. Pursuant to said section of the Act, the Secretary has promulgated Social Security Administration Regulation No. 4, Section 404.323(c) (2), which provides in part as follows: " * * * the term 'private child-placement agency' means any individual, corporation, organization, or institution licensed or approved by a State or local governmental agency or component of either to place children in a private home for adoption. The term does not include any other individual, corporation, organization, or institution undertaking an investigation or appointed by a court in an adoption proceeding unless such individual or entity is au-

thorized to place children in a private home for adoption."

■ Unfortunately, under the circumstances in this case, the regulations of the Secretary are not in themselves models of clarity. However, in looking at the legislative history of the statute involved, the purposes behind the statute, the regulations of the Secretary as a whole, and the applicable law of the State of Maryland contained in Article 88A of the Annotated Code of Maryland, the court is compelled to the conclusion that the words "private child-placement agency," as used in the federal statute, do not include a natural parent who is not in the business of placing children at large for adoption under state authority.

The words themselves would not ordinarily be construed to include an individual parent. Webster's Third New International Dictionary defines "agency" as

"an establishment *engaged in doing business for another*" (Emphasis supplied).

Therefore a natural parent placing her own child for adoption as an isolated transaction would not be within the ordinary dictionary meaning of the term "child placement agency."

The legislative history shows that originally an adopted child who was not adopted within the 24-month period beginning with the month after the month in which the claimant most recently became entitled to disability insurance benefits would be entitled to no benefits at all. Senator Allott, in proposing the amendment to the Act which is now found at Section 402(d) (8) (E) in 1967, as is shown in the Congressional Record (113 Cong.Rec. 33196–44197) on November 20, 1967, acknowledged that the purpose of the original restriction was to prevent persons from abusing adoption processes by adopting children for the purpose of increasing disability payments to themselves under the Act. The purpose of Senator Allott's amendment was to liberalize payments for adopted children while, at the same time, at-

tempting to insure against abuse by requiring that the adoption take place under the supervision of a public or private child placement agency in addition to the requirement that there be a legal adoption decreed by a court of competent jurisdiction. The Congress was providing what it believed to be safeguards to prevent abuse of the adoptive process for the purpose of increasing disability payments to individuals who might otherwise be tempted to increase their payments by adopting children without regard to the real welfare of said children.

This is not to say that there is any evidence in this case that such was the intent of the claimant; to the contrary, the evidence is admitted to show good faith on the part of the claimant.

In view of the court's judgment as to the intent of Congress, the court is further of the opinion that the Secretary's regulations are in accord with the intent of Congress and that the term "children," as used in Regulation 404.323(c)(2), means children in general and was not intended to include an isolated placement of the natural child of the individual.

Although the Maryland law authorizes the placement of natural children by a natural parent without the requirement of going through a child placement agency, Section 20 of Article 88A of the Annotated Code of Maryland (1969 · Replacement Volume) makes it clear that the Maryland legislature itself distinguishes between a "child placement agency" and the "child's natural parent or parents." The last sentence of the first paragraph of Section 20 reads as follows:

> "The placement of a child by anyone other than a licensed child placement agency, local department of social services or the child's natural parent or parents, grandparents or the child's natural parents' adult brothers or sisters is prohibited."

It is apparent that the Maryland legislature exempted three classes of persons or institutions from the prohibition against the placement of children for adoption. These classes, which are necessarily distinguished from each other, are (1) "a licensed child placement agency," (2) the "local department of social services," and (3) certain of the child's natural relatives, including "the child's natural parent or parents." The mere fact that the natural mother of Joseph Gillums, not as a part of her business and as an isolated transaction, was allowed under Maryland law to place her child for adoption obviously does not mean that she was or is a "private child placement agency * * * licensed or approved by a state or local governmental agency or component of either to place children in a private home for adoption."

Under similar facts, Judge Taylor of the Eastern District of Tennessee reached the same conclusion as this court as to the differentiation between a "private child placement agency" and a natural parent for the purposes of 42 U.S.C. Section 402(d) (8) (E). Keys v. Richardson, 325 F.Supp. 459 (E.D.Tenn. 1971).

The court is also of the opinion that Congress, assuming the court's interpretation of the Act is correct, has unquestionably the power to make the classification which it has made. If the legislature has any rational basis for the classification which it makes, said classification is valid. Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L. Ed.2d 1435 (1960). Here the basis of the classification was, as previously indicated, the belief that placement agencies licensed or approved by the state would provide necessary investigative and other facilities to insure that adoptions would not be obtained or granted solely or primarily for the purpose of enhancing disability benefits under the Social Security Act as opposed to enhancing the welfare and interest of the adopted child. Such a basis is at least rational, irrespective of its wisdom.

For the above reasons, the court believes that the claim in this case was properly decided by the Secretary and that the denial of said claim was proper

**208**

for the reasons given in the opinion of the Hearing Examiner in his findings of fact and conclusions of law, dated May 1, 1970. Accordingly, the motion for summary judgment on behalf of the defendant Secretary is granted and judgment will be entered for the defendant.